**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| TIMOTHY R. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION FILE |
| | ) |
| HOUSTON COUNTY, GEORGIA; | ) NO. _5:15-CV-419-CAR_ |
| CITY OF WARNER ROBINS, GEORGIA; | ) |
| JOHNNY C. SIKES, individually and in his | ) |
| official capacity as (former) Warden of | ) |
| Georgia State Prison (Reidsville); | ) |
| HILTON HALL, individually and in his | ) |
| official capacity as (former) Warden of | ) |
| Georgia State Prison (Reidsville); | ) |
| HUGH SMITH, individually and in his | ) DEMAND FOR TRIAL BY |
| official capacity as (former) Warden of | ) JURY |
| Georgia State Prison (Reidsville); | ) |
| RONALD KING, individually and in his | ) |
| official capacity as an employee of Georgia | ) |
| State Prison (Reidsville); | ) |
| CULLEN TALTON, individually and in his | ) |
| official capacity as the Sheriff of Houston | ) |
| County; | ) |
| SERGEANT M. HAYS, individually and in | ) |
| her official capacity as a Deputy of Houston | ) |
| County Sheriff's Office; | ) |
| DETECTIVE DEBORAH D. MILLER, | ) |
| individually and in her official capacity as an | ) |
| Officer of Warner Robins Police Department; | ) |
| DETECTIVE JAMES MILLER, individually | ) |
| and in his official capacity as an Officer of | ) |
| Warner Robins Police Department; | ) |
| | ) |

DETECTIVE MALCOLM ("MAC") H.                    )
DERRICK, JR., individually and in his           )
official capacity as an Officer of Warner        )
Robins Police Department;                        )
CAPTAIN H. D. DENNARD, individually             )
and in his official capacity as an Officer of    )
Warner Robins Police Department;                 )
LIEUTENANT R. G. WEST, individually             )
and in his official capacity as an Officer of    )
Warner Robins Police Department;                 )
DETECTIVE BRAD MULES, individually              )
and in his official capacity as an Investigator  )
for Warner Robins Police Department;             )
CAPTAIN STEPHEN D. LYNN, individually          )
and in his official capacity as an Investigator  )
for Warner Robins Police Department;             )
LIEUTENANT MICHAEL GARRETT,                     )
individually and in his official capacity as a   )
Deputy of Houston County Sheriff's Office;       )
SERGEANT JOHN STINSON, JR.,                     )
individually and in his official capacity as a   )
Deputy of Houston County Sheriff's Office;       )
DEPUTY FNU GRANVILLE, individually              )
and in his official capacity as a Deputy of      )
Houston County Sheriff's Office,                 )
                                                 )
Defendants.                                      )
                                                 )
_____         )

## **COMPLAINT**

COMES NOW Plaintiff Timothy R. Johnson ("Plaintiff" or "Johnson") and

files this Complaint against Defendants, showing the Court as follows:

# I.   <u>INTRODUCTION</u>

1.

In 1984, twenty-two-year-old Timothy R. Johnson was wrongfully imprisoned for a crime he did not commit.  Over the next twenty-nine years, Johnson languished in the custody of the State of Georgia, first in the Georgia State Prison (Reidsville) and then in the Houston County Jail.  While housed in the Georgia State Prison, Johnson was subjected to inhumane and debilitating lengths of solitary confinement.  For over nine years, Johnson lived in a cramped, windowless cell and was deprived of necessary human contact.  During those nine years, prison officers would storm Johnson's solitary cell and brutally beat him, breaking his bones and his spirit.  Johnson remained in this cell until the Supreme Court of Georgia awarded him a retrial in 2006.

Inexplicably, the Houston County District Attorney took seven years to retry Johnson.  While awaiting his retrial, Johnson was moved to the Houston County Jail, where he remained for seven years until a jury acquitted him on December 5, 2013.  A few years into his confinement, Houston County moved Johnson -- without explanation or disciplinary infraction -- to solitary confinement, where he remained for over four and a half more years.  Johnson, an innocent man, again lived in a cramped, windowless cell and was deprived of necessary human contact

while he was awaiting justice.

On December 5, 2013, Johnson was acquitted of all charges and eventually left the custody of the Houston County Jail.  Finally free, Johnson now brings this civil rights action against the persons and entities responsible for his brutal, unconstitutional treatment.

## II.    JURISDICTION AND VENUE

2.

Johnson brings these claims pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343, which provide for original jurisdiction of this Court in suits based respectively on federal questions and authorized by 42 U.S.C. § 1983, which provides a cause of action for the protection of rights, privileges or immunities secured by the Constitution of the United States.

4.

Johnson also brings Georgia state law claims under O.C.G.A. § 51-7-40.

5.

This Court has supplemental jurisdiction over Johnson's Georgia state law

claims pursuant to 28 U.S.C. § 1367, which provides that in any civil action of which this Court has original jurisdiction, this Court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.

Venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b)(1), because Defendants Houston County, Georgia, City of Warner Robins, Georgia, Cullen Talton, Malcolm ("Mac") Derrick, Jr., Michael Garrett, Brad Mules, Stephen D. Lynn, John Stinson, Jr., and Deborah D. Miller are located and/or reside in the Middle District of Georgia, and upon information and belief, all other Defendants reside in the State of Georgia.

7.

In the alternative, venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Georgia.

8.

In the alternative, venue is proper in the Middle District of Georgia pursuant to 28 U.S.C. § 1391(b)(3) because upon information and belief, Defendants

Houston County, Georgia, City of Warner Robins, Georgia, Cullen Talton,

Malcolm ("Mac") Derrick, Jr., Michael Garrett, Brad Mules, Stephen D. Lynn,

John Stinson, Jr., and Deborah D. Miller are located and/or reside in the Middle

District of Georgia.

### III.   PARTIES

9.

Plaintiff Timothy R. Johnson is a resident of the State of Georgia.

10.

Defendant Houston County, Georgia, is a political subdivision of the State of

Georgia and is located within this District.  The County is subject to the

jurisdiction of this Court and may be served with process through the Chairman of

its Board of Commissioners, Tommy Stalnaker, and its County Attorney, Tom

Hall, both located at 200 Carl Vinson Parkway, Warner Robins, Georgia 31088.

11.

Defendant City of Warner Robins, Georgia, is a political subdivision of the

State of Georgia, located in Houston County, and located within this District.  The

Warner Robins Police Department is a law enforcement entity of the City of

Warner Robins, Georgia.  The City of Warner Robins, Georgia, is subject to the

jurisdiction of this Court and may be served with process through the Mayor

Randy Toms, 700 Watson Boulevard, Warner Robins, Georgia 31093; City Clerk, William Harte, at 700 Watson Boulevard, Warner Robins, Georgia 31093; and City Attorney, Jim Elliott, Esq., at 700 Watson Boulevard, Warner Robins, Georgia 31093.

12.

Defendant Johnny C. Sikes was at all times material to the allegations in this Complaint employed as the Warden of the Georgia State Prison.[1]  While Warden of the Georgia State Prison, he participated, caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane confinement of Johnson at the Georgia State Prison, and he participated in and created the conditions, actions, policies, customs, and practices that resulted in Johnson's unconstitutional treatment.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below. He is sued in his individual capacity and in his official capacity.

---

[1]   Because all Wardens and Defendant Ronald King were in the employ of the Georgia Department of Corrections (DOC), the DOC shall be served with process through its Commissioner, Homer Bryson, located at 2 Martin Luther King, Jr. Drive, SE Twin Towers - East, Suite 866, Atlanta, Georgia, 30334.  Process shall also be served upon Mr. Wade Damron, Director, Risk Management Division, Department of Administrative Services, 200 Piedmont Avenue, Suite 1208, West Tower, Atlanta, Georgia 30334.  Finally, a copy of this Complaint showing the date of its filing is being mailed contemporaneously with this filing to the Attorney General of Georgia at his office address by certified mail, return receipt requested.

13.

Defendant Hilton Hall was at all times material to the allegations in this Complaint employed as the Warden of the Georgia State Prison.  While Warden of the Georgia State Prison, he participated, caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane confinement of Johnson at the Georgia State Prison, and he participated in and created the conditions, actions, policies, customs, and practices that resulted in Johnson's unconstitutional treatment.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

14.

Defendant Hugh Smith was at all times material to the allegations in this Complaint employed as the Warden of the Georgia State Prison.  While Warden of the Georgia State Prison, he participated, caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane confinement of Johnson at the Georgia State Prison, and he participated in and created the conditions, actions, policies, customs, and practices that resulted in Johnson's unconstitutional treatment.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued

in his individual capacity and in his official capacity.

15.

Defendant Ronald King was at all times material to the allegations in this Complaint employed as the Hearing Officer for the Office of Inmate Discipline at the Georgia State Prison.  He is sued in his individual capacity and in his official capacity.

16.

Defendant Sergeant M. Hays was at all times material to the allegations in this Complaint employed as the Chairperson of the Classification Committee of the Houston County Jail and as a Deputy for the Houston County Sheriff's Office.  She is sued in her individual capacity and in her official capacity.

17.

Defendant Cullen Talton was at all times material to the allegations in this Complaint serving as the Sheriff of Houston County.  Talton had final authority to make policy for the Houston County Sheriff's Department and the authority to operate and manage the Houston County Jail.  As such, he caused, participated, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane confinement of Johnson at the Houston County Jail, and he participated in and created the conditions, actions, policies,

9

customs, and practices that resulted in Johnson's unconstitutional treatment.  He

has, therefore, directly and proximately caused the injuries and violations of rights

set forth below.  He is sued in his individual capacity and in his official capacity.

18.

Defendant Detective Deborah D. Miller (hereinafter "D. Miller") was at all

times material to the allegations in this Complaint employed as an Officer of

Warner Robins Police Department.  Detective D. Miller unconstitutionally seized

Johnson and instituted or continued to institute a criminal prosecution (Indictment

Nos. 84-C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The

prosecution was carried on maliciously and without any probable cause and was

ultimately terminated in Johnson's favor.  She has, therefore, directly and

proximately caused the injuries and violations of rights set forth below.  She is

sued in her individual capacity and in her official capacity.

19.

Defendant Detective James Miller (hereinafter "J. Miller") was at all times

material to the allegations in this Complaint employed as an Officer of Warner

Robins Police Department.  Detective J. Miller unconstitutionally seized Johnson

and instituted or continued to institute a criminal prosecution (Indictment Nos. 84-

C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The prosecution

was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

20.

Defendant Detective Malcolm ("Mac") H. Derrick, Jr. was at all times material to the allegations in this Complaint employed as an Officer of Warner Robins Police Department.  Detective Derrick unconstitutionally seized Johnson, coerced Johnson to confess to a crime he did not commit, and instituted or continued to institute a criminal prosecution (Indictment Nos. 84-C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

21.

Defendant Captain H. D. Dennard was at all times material to the allegations in this Complaint employed as an Officer of Warner Robins Police Department.  Captain Dennard unconstitutionally seized Johnson and instituted or continued to

institute a criminal prosecution (Indictment Nos. 84-C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor. He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

22.

Defendant Lieutenant R. G. West was at all times material to the allegations in this Complaint employed as Officer of Warner Robins Police Department. Lieutenant West unconstitutionally seized Johnson and instituted or continued to institute a criminal prosecution (Indictment Nos. 84-C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor. He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

23.

Defendant Lieutenant Michael Garrett was at all times material to the allegations in this Complaint employed as a Deputy for the Houston County

Sheriff's Office.  Lieutenant Garrett unconstitutionally seized Johnson and instituted or continued to institute a criminal prosecution (Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

24.

Defendant Sergeant John Stinson, Jr. was at all times material to the allegations in this Complaint employed as Deputy for the Houston County Sheriff's Office.  Sergeant Stinson unconstitutionally seized Johnson and instituted or continued to institute a criminal prosecution (Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor. He has, therefore, directly and proximately caused the injuries and violations of rights set forth below. He is sued in his individual capacity and in his official capacity.

25.

Defendant Detective Brad Mules was at all times material to the allegations in this Complaint employed as an Investigator for the Warner Robins Police Department.  Detective Mules unconstitutionally seized Johnson and instituted or

continued to institute a criminal prosecution (Indictment No. 2006-C-36819-N)
against him.  The prosecution was carried on maliciously and without any probable
cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly
and proximately caused the injuries and violations of rights set forth below.  He is
sued in his individual capacity and in his official capacity.

26.

Defendant Captain Stephen D. Lynn was at all times material to the
allegations in this Complaint employed as an Investigator for the Warner Robins
Police Department.  Captain Lynn unconstitutionally seized Johnson and instituted
or continued to institute a criminal prosecution (Indictment No. 2006-C-36819-N)
against him.  The prosecution was carried on maliciously and without any probable
cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly
and proximately caused the injuries and violations of rights set forth below.  He is
sued in his individual capacity and in his official capacity.

27.

Deputy FNU Granville was at all times material to the allegations in this
Complaint employed as a Deputy for the Houston County Sheriff's Office.  Deputy
Granville unconstitutionally seized Johnson, coerced Johnson to confess to a crime
he did not commit, and instituted or continued to institute a criminal prosecution

(Indictment Nos. 84-C-13300/13328, Indictment No. 2006-C-36819-N) against him.  The prosecution was carried on maliciously and without any probable cause and was ultimately terminated in Johnson's favor.  He has, therefore, directly and proximately caused the injuries and violations of rights set forth below.  He is sued in his individual capacity and in his official capacity.

## IV.   FACTUAL ALLEGATIONS

### A. Johnson's Arrest, Sentence, Conviction, and Exoneration

28.

On September 14, 1984, a convenience store clerk, Taressa Stanley, was shot during an armed robbery by an unknown assailant.

29.

Timothy R. Johnson, a twenty-two-year-old African-American male, was arrested by Warner Robins Police Officers Captain Dennard and Lieutenant West in Houston County on murder and armed robbery charges.  The arresting officers, Dennard and West, arrested Johnson without probable cause.  These actions, upon information and belief, were taken pursuant to a policy and/or custom of the City of Warner Robins.

30.

Detectives J. Miller, D. Miller, and Derrick, Officers of the Warner Robins

Police Department, investigated the murder and armed robbery, and sought the unlawful arrest and prosecution of Johnson, despite not having the requisite probable cause.  These actions, upon information and belief, were taken pursuant to a policy and/or custom of the City of Warner Robins.

31.

After Johnson's arrest, Detective Derrick, Deputy Granville and other unknown law enforcement officers continually pressured Johnson to write a confession.  On or about September 24, 1984, the Houston County Jail placed Johnson in solitary confinement, where Johnson remained for the next three months.  In October of 1984, Deputy Granville forced Johnson out of his cell and took him to a bridge where other unknown law enforcement officers and Detective Derrick were waiting.  While Detective Derrick watched, several of the unknown officers grabbed Johnson and dangled him over the bridge, yelling at Johnson to sign the confession or else he would be dropped off the bridge's edge.  These actions, upon information and belief, were taken pursuant to a policy and/or custom of the City of Warner Robins.

32.

Fearing for his life and the fate of his family members, Johnson pled guilty to armed robbery and murder on December 11, 1984, in exchange for the death

penalty being removed from the table.  Johnson was sentenced to life in prison.

When this plea agreement was made, Johnson's mother, stepfather, and girlfriend

had all been arrested.  After Johnson's plea was entered, the charges against his

family were dropped.  These actions, upon information and belief, were taken

pursuant to a policy and/or custom of the City of Warner Robins.

33.

On February 13, 2006, the Supreme Court of Georgia overturned Johnson's

conviction and sentence.  *Johnson v. Smith*, 280 Ga. 235 (2006).  The Supreme

Court held that the record did not support a finding that either the sentencing court

or Johnson's attorney advised Johnson of his right to confront witnesses or his

right to avoid self-incrimination.  As a result, the plea was not made knowingly,

intelligently, and voluntarily.

34.

On or about March 22, 2006, Johnson was moved from the Georgia State

Prison to the Houston County Jail, where he was unlawfully re-arrested without

probable cause by Lieutenant Garrett and Sergeant Stinson, Deputies of the

Houston County Sheriff's Office.  The State did not re-indict Johnson until on or

about June 6, 2006, with the assistance of Detective Mules and Captain Lynn of

the Warner Robins Police Department, who purportedly re-investigated the murder

and armed robbery charges and thereafter initiated the re-indictment and prosecution of Johnson.  Within a month of the indictment, the District Attorney filed a notice to again seek the death penalty, the same tactic previously employed by the State to coerce a guilty plea from Johnson.

35.

The Houston District Attorney's Office did not try Johnson until December 1, 2013, more than seven years after the Supreme Court of Georgia overturned his initial conviction and sentence.  The Houston District Attorney's Office cannot articulate a good faith, non-dilatory reason for the seven-year lapse before Johnson's trial.

36.

On December 5, 2013, a jury acquitted Johnson of all charges. After spending twenty-nine years in confinement, Johnson was finally free.

37.

On June 4, 2014, and December 3, 2014, Johnson sent Ante Litem Notices to Houston County, Georgia, notifying it of his claims for malicious prosecution, false arrest, false imprisonment, and civil rights violations.  Johnson never received a response from Houston County.

38.

On June 4, 2014, and June 6, 2014, Johnson sent Ante Litem Notices to the City of Warner Robins, Georgia, notifying it of his claims for malicious prosecution, false arrest, false imprisonment, and civil rights violations.  Johnson never received a response from the City of Warner Robins.

39.

On June 4, 2014, Johnson sent an Ante Litem Notice to the State of Georgia, notifying it of his claims for false arrest, false imprisonment, and civil rights violations.  Johnson never received a response from the State of Georgia.

**B. Johnson's Confinement at Georgia State Prison (Reidsville)**

40.

Johnson, an innocent man, was incarcerated at Georgia State Prison from on or about March 22, 1985, until March 22, 2006.

41.

In early 1997, Defendant Ronald King, Hearing Officer for the Office of Inmate Discipline, ordered that Johnson be sent to solitary confinement for failing to stand in his cell for the Warden's inspection.

42.

Johnson, an innocent man, remained in solitary confinement for the next

19

nine years on King's instruction and with the approval of Warden Sikes, Warden Hall, Warden Smith during each Warden's respective term. Each Warden was aware of Johnson's lengthy confinement in solitary but failed to remove Johnson or pursue other alternative punishments for Johnson's alleged disciplinary violations.

43.

For over nine years, Johnson was housed in a cramped, windowless cell and given almost no access to recreation, exercise, or any programming or vocational activities. These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

44.

For over nine years, Johnson was deprived of interaction with other human beings. Communication with other inmates was virtually impossible, and the prison would not allow him to make any phone calls. These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

45.

While housed in solitary confinement for over nine years, Johnson could only exit his cell to shower, was only given access to the yard for exercise three or

four times, and was prevented from going to the prison library.  These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

46.

For over nine years, Johnson was visited by a group of guards once or twice a week.  These guards -- referred to as the "Goon Squad"-- would enter Johnson's cell without any provocation or justification and beat Johnson.  These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

47.

As a result of these regular beatings, Johnson suffered many physical and mental injuries.  The guards broke Johnson's right foot, both knees, a toe, a finger, and caused other injuries.  Johnson was not provided with medical treatment to heal these injuries.  These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

48.

The serious mental-health impact of even a few years in solitary confinement is well documented, yet the mental health care provided to Johnson was grossly inadequate.  About once a month, a psychologist would walk past

Johnson's cell and ask, "How are you doing?"  Johnson never had any substantive conversations with the psychologist.  These actions, upon information and belief, constituted a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

49.

As a result of his solitary confinement at the Georgia State Prison, Johnson has suffered anxiety, insomnia, nightmares, difficulties concentrating, heart palpitations, depression, hallucinations, and trouble with his vision.

50.

Johnson was punished with over nine years of solitary confinement for failing to stand for the Warden's inspection.  Feasible alternatives existed but were not utilized by the Georgia State Prison.  Johnson's punishment was grossly disproportionate to the alleged offense, totally without penological justification, and amounted to cruel and unusual punishment in violation of the Eighth Amendment.  When violated by Defendants Sikes, Hall, Smith, and King, this constitutional right was clearly established.

**C. Johnson's Confinement at the Houston County Jail**

51.

Johnson, an innocent man, was incarcerated at the Houston County Jail from

March 22, 2006, until December 5, 2013, while he awaited his retrial.

52.

When Johnson entered the Houston County Jail, he was immediately classified as "medium maximum" security and placed in an "H" pod cell, where he was deprived of a cellmate.  Whenever Johnson moved around the jail, upon information and belief, Houston County and/or Sheriff Talton required that Johnson be escorted by a supervising officer and a deputy.  Johnson was the only prisoner subjected to this unjustified, unnecessary requirement.  These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

53.

On or about May 15, 2009, Defendant Sergeant M. Hays, the Chairperson of Houston County Jail's Classification Committee, ordered that Johnson be sent to solitary confinement.  Sergeant Hays did not inform Johnson why he was being placed in solitary confinement.

54.

Johnson never had any disciplinary charges or issues while housed at the Houston County Jail from March 22, 2006, through December 5, 2013.

55.

Houston County and/or Sheriff Talton did not provide Johnson with an advanced written notice of any charges against him.  Houston County and/or Sheriff Talton did not provide Johnson with a statement (written or oral) explaining why this "disciplinary" action was taken.  Houston County and/or Sheriff Talton did not provide Johnson with the opportunity to call witnesses and present evidence.  These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

56.

On Sergeant Hays's, and/or Sheriff Talton's, and/or Houston County's order, custom and/or policy, Johnson remained in solitary confinement for the next four and a half years until he was acquitted by a jury of all charges against him.

57.

Defendant Sheriff Talton participated, created, authorized, condoned, ratified, approved, or knowingly acquiesced in Johnson's illegal, unconstitutional confinement at the Houston County Jail, and he participated in and created the conditions, actions, policies, customs, and practices that resulted in Johnson's unconstitutional treatment.

58.

For four and a half years, Johnson was housed in a cramped, windowless cell at the Houston County Jail.  These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

59.

For four and a half years at the Houston County Jail, Johnson was deprived of interaction with other human beings.  Communication with other inmates was virtually impossible.  These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

60.

While housed in solitary confinement in Houston County Jail, Johnson could only exit his cell to shower and occasionally attend 30-minute "yard calls."  During yard calls, Johnson was permitted to be outside in the jail yard, but he could not interact with any other inmates.  Upon information and belief, Houston County policy requires Houston County Jail to provide Johnson with 30 minutes of yard time every day.  Yard time, however, was often cancelled multiple times per week. These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

61.

The serious mental-health impact of even a few years in solitary confinement is well documented, yet Johnson was never seen by a psychologist while he was in solitary confinement at the Houston County Jail for four and a half years.  These actions, upon information and belief, constituted a policy and/or custom of Sheriff Talton and/or Houston County.

62.

As a result of his confinement in solitary at the Houston County Jail, Johnson has suffered anxiety, insomnia, nightmares, difficulties concentrating, heart palpitations, depression, hallucinations, and trouble with his vision.

63.

Johnson was placed in solitary confinement for four and a half years for no articulated reason.  Johnson's time in solitary confinement was grossly disproportionate to the unspecified "offense," totally without penological justification, and amounted to cruel and unusual punishment in violation of the Eighth Amendment.  When violated by Defendants Hays, Talton, and Houston County, this constitutional right was clearly established.

64.

This deprivation of Johnson's right to be free from cruel and unusual

punishment was the direct result of Sheriff Talton's and/or Houston County's policy and/or custom to confine certain prisoners in solitary without any penological justification while the prisoner awaited trial.

66.

Further, Johnson was placed in solitary confinement without sufficient due process.  Solitary confinement is an atypical and significant hardship in relation to the ordinary incidents of prison life and amounts to a liberty deprivation that entitles the prisoner to due process.

66.

Johnson was subjected to four and a half years of solitary confinement without any due process, in violation of the Fourteenth Amendment.  When violated by Defendants Hays, Talton, and Houston County, this constitutional right was clearly established.

## V.   CLAIMS FOR RELIEF

### COUNT I: EIGHTH AND FOURTEENTH AMENDMENTS
### (CRUEL AND UNUSUAL PUNISHMENT)
### Against Defendants Sikes, Hall, Smith, and King
### (Georgia State Prison-Reidsville)

67.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

68.

Defendants Sikes, Hall, Smith, and King deprived Johnson of life's necessities and violated his basic human dignity and right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for the reasons set forth below.

## A. Deprivation of Basic Human Need

69.

First, the cumulative effect of extremely prolonged confinement, along with the deprivation of good medical care and the other crushing conditions of confinement at the Georgia State Prison, constitute a serious deprivation of at least one basic human need, including but not limited to normal human contact, environmental and sensory stimulation, mental and physical health, physical exercise, sleep, nutrition, and meaningful activity.

## B. Imposition of Serious Psychological and Physical Injury, Pain, and Suffering

70.

Second, extremely prolonged exposure to these deprivations of basic human needs imposed serious psychological pain and suffering, and permanent psychological and physical injury on Johnson.

### C. Disproportionate Punishment

71.

Third, Defendants Sikes, Hall, Smith, and King had no legitimate penological interest in confining Johnson for over nine years in the debilitating conditions of solitary confinement simply because Johnson failed to follow an officer's instruction.

72.

The confinement of Johnson by Defendants Sikes, Hall, Smith, and King inflicted significant psychological and physical harm and offended civilized society's sense of decency, constituted an intolerable practice in modern society, and was a disproportionate punishment that violated the Eighth and Fourteen Amendments of the Constitution.

73.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants Sikes, Hall, Smith and King, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

## COUNT II: EIGHTH AND FOURTEENTH AMENDMENTS
## (CRUEL AND UNUSUAL PUNISHMENT)
## Against Defendants Houston County, Talton, and Hays (Houston County Jail)

74.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

75.

Defendants Houston County, Talton, and Hays deprived Johnson of life's necessities and violated his basic human dignity and right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution for the reasons set forth below.

### A. Deprivation of Basic Human Need

76.

First, the cumulative effect of extremely prolonged confinement, along with the deprivation of good medical care and the other crushing conditions of confinement at the Houston County Jail, constitute a serious deprivation of at least one basic human need, including but not limited to normal human contact, environmental and sensory stimulation, mental and physical health, physical exercise, sleep, nutrition, and meaningful activity.

### B. Imposition of Serious Psychological and Physical Injury, Pain, and Suffering

77.

Second, extremely prolonged exposure to these deprivations of basic human needs imposed serious psychological pain and suffering, and permanent psychological and physical injury on Johnson.

### C. Disproportionate Punishment

78.

Third, Defendants Houston County, Talton, and Hays had no legitimate penological interest in confining Johnson for four and a half years in the debilitating conditions of solitary confinement.  These Defendants never articulated a reason for this inhumane punishment.

79.

The confinement of Johnson by Defendants Houston County, Talton, and Hays inflicted significant psychological and physical harm and offended civilized society's sense of decency, constituted an intolerable practice in modern society, and was a disproportionate punishment that violated the Eighth and Fourteen Amendments of the Constitution.

80.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants Houston County, Talton, and Hays, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

**COUNT III: FOURTEENTH AMENDMENT**
**(DUE PROCESS)**
**Against Defendants Sikes, Hall, Smith, and King**
**(Georgia State Prison-Reidsville)**

81.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

82.

Defendants Sikes, Hall, Smith, and King deprived Johnson of a liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

83.

The harsh conditions and lengthy duration of Johnson's confinement by Defendants Sikes, Hall, Smith, and King constituted an atypical and significant hardship as compared with the ordinary incidents of jail life.

## A. Conditions of Confinement

### 84.

The conditions of Johnson's solitary confinement were unduly hard and did not mirror those conditions imposed upon other inmates of the Georgia State Prison.  These harsh conditions include, but are not limited to: isolation in a cell that was sealed off from contact with other inmates, lack of a window, no educational programming, and limited access to exercise facilities or the outdoors.

### 85.

While in the Georgia State Prison, Johnson was subjected to these inhumane conditions for over nine years.

## B. Lack of Meaningful Process

### 86.

Because indefinite placement in solitary confinement constitutes a significant and atypical hardship, Johnson was entitled to due process.

### 87.

The "process" provided by Defendants Sikes, Hall, Smith, and King was inadequate and not meaningful.

### 88.

Defendants Sikes, Hall, Smith, and King also violated Johnson's due process

rights by subjecting him to solitary confinement for over nine years without a legitimate penological interest and without due process. This deprivation of Johnson's right to due process was in accordance with a policy and/or custom of Warden Sikes, Warden Hall, and Warden Smith.

89.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants Sikes, Hall, Smith, and King, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

**COUNT IV: FOURTEENTH AMENDMENT**
**(DUE PROCESS)**
**Against Defendants Houston County, Talton, and Hays (Houston County Jail)**

90.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

91.

Defendants Houston County, Talton, and Hays deprived Johnson of a liberty interest without due process of law in violation of the Fourteenth Amendment of the United States Constitution.

92.

The harsh conditions and lengthy duration of Johnson's confinement by

Defendants constituted an atypical and significant hardship as compared with the ordinary incidents of jail life.

## A. Conditions of Confinement

### 93.

The conditions of Johnson's solitary confinement were unduly hard and did not mirror those conditions imposed upon other inmates of the Houston County Jail.  These harsh conditions include, but are not limited to: isolation in a cell that was sealed off from contact with other inmates, lack of a window, no educational programming, and limited access to exercise facilities or the outdoors.

### 94.

While in the Houston County Jail, Johnson was subjected to these inhumane conditions for four and a half years.

## B. Lack of Meaningful Process

### 95.

Because indefinite placement in solitary confinement constitutes a significant and atypical hardship, Johnson was entitled to due process.

### 96.

Defendants Houston County, Talton, and Hays violated Johnson's right to due process by failing to provide Johnson with: (1) an advanced written notice of

any charges against him, (2) a statement (written or oral) of the reasons for the "disciplinary" action taken, or (3) the opportunity to call witnesses and present evidence.

97.

Defendants Houston County, Talton, and Hays also violated Johnson's due process rights by subjecting him to solitary confinement for four and a half years without a legitimate penological interest.  This deprivation of Johnson's right to due process was the direct result of Sheriff Talton's and/or Houston County's policy and custom to confine certain prisoners in solitary without any notice, justification, or opportunity to call witnesses and present evidence.

98.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants  Houston County, Talton, and Hays, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

**COUNT V: FOURTH AND FOURTEENTH AMENDMENTS
(MALICIOUS PROSECUTION)
Against Defendants D. Miller, J. Miller, Derrick, Dennard, West,
Granville, and City of Warner Robins (1984 Indictment)**

99.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

100.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins deprived Johnson of his right to be to be secure in his person against unreasonable seizures and malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution for the reasons set forth below.

**A. Unlawful Seizure**

101.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins seized Johnson, or caused Johnson to be seized, without the requisite probable cause for a lawful seizure. These actions, upon information and belief, were pursuant to a custom and/or policy of the City of Warner Robins.

102.

The malicious actions of Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins led to the wrongful conviction of Johnson, which caused him to be unlawfully seized and imprisoned.

103.

After spending twenty-nine years in confinement, Johnson was ultimately acquitted of all charges by a jury on December 5, 2013.

### B. Malicious Prosecution

104.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins maliciously initiated and assisted with the prosecution of Johnson (Indictment Nos. 84-C-13300/13328), which included the threat of the death penalty.  After Johnson was unlawfully arrested, he was forced under coercion and threat to plead guilty in exchange for the death penalty being removed from the table.  These actions, upon information and belief, were pursuant to a custom and/or policy of the City of Warner Robins.

105.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants D. Miller, J. Miller, Derrick, Dennard, West,  Granville and City of Warner Robins, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

### COUNT VI: FOURTH AND FOURTEENTH AMENDMENTS (MALICIOUS PROSECUTION) Against Defendants Garrett, Stinson, Mules, and Lynn (2006 Indictment)

106.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

107.

Defendants Garrett, Stinson, Mules, and Lynn deprived Johnson of his right to be to be secure in his person against unreasonable seizures and malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution for the reasons set forth below.

**A. Unlawful Seizure**

Defendants Garrett, Stinson, Mules, and Lynn seized Johnson, or caused Johnson to be seized, without the requisite probable cause for a lawful seizure.

108.

The malicious actions of Defendants Garrett, Stinson, Mules, and Lynn led to the wrongful re-arrest and confinement of Johnson until he was re-indicted on or about June 6, 2006, and ultimately acquitted of all charges by a jury on December 5, 2013.

**B. Malicious Prosecution**

109.

Defendants Garrett, Stinson, Mules, and Lynn maliciously initiated and assisted with the prosecution of Johnson (Indictment No. 2006-C-36519), which also included the threat of the death penalty.  After Johnson's initial conviction was overturned by the Supreme Court of Georgia, he was prosecuted for the same

crimes, based on evidence that did not form the requisite probable cause.

110.

As a direct and proximate result of this violation of Johnson's constitutional

rights by Defendants Garrett, Stinson, Mules, and Lynn, Johnson suffered damages

and is entitled to relief under 42 U.S.C. § 1983.

### COUNT VII: FOURTH AND FOURTEENTH AMENDMENTS (MALICIOUS PROSECUTION) Against Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins (2006 Indictment)

111.

Johnson incorporates by reference each and every allegation contained in the

preceding paragraphs as if set forth fully herein.

112.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City

of Warner Robins deprived Johnson of his right to be secure in his person against

unreasonable seizures and malicious prosecution under the Fourth and Fourteenth

Amendments to the United States Constitution for the reasons set forth below.

**A. Unlawful Seizure**

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City

of Warner Robins caused Johnson to be seized, without the requisite probable

cause for a lawful seizure.  These actions, upon information and belief, were taken

pursuant to a policy and/or custom of the City of Warner Robins.

113.

The malicious actions of Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins led to the wrongful re-arrest and confinement of Johnson through and including when Johnson was re-indicted on or about June 6, 2006 until his acquittal of all charges by a jury on December 5, 2013.

**B. Malicious Prosecution**

114.

By virtue of their participation in the initial investigation and wrongful prosecution of Johnson (Indictment Nos. 84-C-13300/13328), Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins maliciously assisted and continued to initiate the prosecution of Johnson (Indictment No. 2006-C-36519), which was based on the same or similar evidence from the initial prosecution that did not form the requisite probable cause.

115.

As a direct and proximate result of this violation of Johnson's constitutional rights by Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins, Johnson suffered damages and is entitled to relief under 42 U.S.C. § 1983.

## COUNT VIII: O.C.G.A. § 51-7-40
## (MALICIOUS PROSECUTION)
## Against Defendants D. Miller, J. Miller, Derrick, Dennard, West
## Granville, and City of Warner Robins (1984 Indictment)

116.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

117.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins seized Johnson, or caused Johnson to be seized, without the requisite probable cause for a lawful seizure.  These actions, upon information and belief, were pursuant to a policy and/or custom of the City of Warner Robins.

118.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins maliciously initiated and assisted with the prosecution of Johnson (Indictment Nos. 84-C-13300/13328), which included the threat of the death penalty.  After Johnson was unlawfully seized, he was forced under coercion and threat to plead guilty in exchange for the death penalty being removed from the table.  These actions, upon information and belief, were pursuant to a policy and/or custom of the City of Warner Robins.

119.

The malicious actions of Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins led to the seizure, arrest, criminal prosecution, and wrongful conviction of Johnson, which was overturned by the Supreme Court of Georgia on February 13, 2006.  After Johnson was re-indicted using the same or similar underlying evidence, Johnson was ultimately acquitted of all charges by a jury on December 5, 2013.

120.

As a direct and proximate result of this malicious prosecution by Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins, Johnson suffered damages and is entitled to relief under O.C.G.A. § 51-7-40.

## **COUNT IX: O.C.G.A. § 51-7-40**
## **(MALICIOUS PROSECUTION)**
## **Against Defendants Garrett, Stinson, Mules, and Lynn**
## **(2006 Indictment)**

121.

Johnson incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

122.

Defendants Garrett, Stinson, Mules, and Lynn seized Johnson, or caused

Johnson to be seized, without the requisite probable cause for a lawful seizure.

123.

The malicious actions of Defendants Garrett, Stinson, Mules, and Lynn led to the unlawful seizure, arrest, and criminal prosecution of Johnson until he was acquitted of all charges by a jury on December 5, 2013.

124.

Defendants Garrett, Stinson, Mules, and Lynn maliciously initiated and assisted with the prosecution of Johnson (Indictment No. 2006-C-36519), which also included the threat of the death penalty.  After Johnson's initial conviction was overturned by the Supreme Court of Georgia, he was prosecuted for the same crimes, based on evidence that did not form the requisite probable cause.

125.

As a direct and proximate result of this malicious prosecution by Defendants Garrett, Stinson, Mules, and Lynn, Johnson suffered damages and is entitled to relief under O.C.G.A. § 51-7-40.

### COUNT X: O.C.G.A. § 51-7-40
### (MALICIOUS PROSECUTION)
### Against Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins (2006 Indictment)

126.

Johnson incorporates by reference each and every allegation contained in the

preceding paragraphs as if set forth fully herein.

127.

Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins caused Johnson to be seized, without the requisite probable cause for a lawful seizure.  These actions, upon information and belief, were pursuant to a policy and/or custom of the City of Warner Robins.

128.

The malicious actions of Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins led to the unlawful seizure, arrest, and criminal prosecution of Johnson until he was acquitted of all charges by a jury on December 5, 2013.

129.

By virtue of their participation in the initial investigation and wrongful prosecution of Johnson (Indictment Nos. 84-C-13300/13328), Defendants D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner Robins maliciously assisted and continued to initiate the prosecution of Johnson (Indictment No. 2006-C-36519), which was based on the same or similar evidence from the initial prosecution that did not form the requisite probable cause.

130.

As a direct and proximate result of this malicious prosecution by Defendants

D. Miller, J. Miller, Derrick, Dennard, West, Granville, and City of Warner

Robins, Johnson suffered damages and is entitled to relief under O.C.G.A. § 51-7-

40.

## VI.    DEMAND FOR JURY TRIAL

131.

Johnson demands a trial by jury of all issues so triable.

## VII.   <u>PRAYERS FOR RELIEF</u>

132.

WHEREFORE, Plaintiff Timothy R. Johnson requests that the Court grant judgment against Defendants for (1) appropriate compensatory damages in an amount to be determined at trial, (2) punitive damages, (3) attorneys' fees and costs, and (4) all other and further just and proper relief.

Respectfully submitted this 9th day of November, 2015.

*/s/ Zahra S. Karinshak*
Zahra S. Karinshak
Karinshak@khlawfirm.com
Georgia Bar No. 407911
Patricia King Minton
Georgia Bar No. 594943

KREVOLIN & HORST, LLC
1201 W. Peachtree Street, N.W.
Suite 3250, One Atlantic Center
Atlanta, GA 30309
(404) 888-9700
(404) 888-9577 (facsimile)
*Counsel for Plaintiff Timothy R. Johnson*