THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TIMOTHY R. JOHNSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CASE NO. 5:15-CV-419-CAR |
| HOUSTON COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Plaintiff Timothy R. Johnson filed this action alleging he was wrongfully prosecuted and imprisoned after his 1984 murder conviction, and then wrongfully re-imprisoned in 2006, until a jury acquitted him in 2013 after his original conviction was overturned. Plaintiff asserts various claims under 42 U.S.C. § 1983 and Georgia tort law against the following Defendants: Houston County, Georgia ("Houston County"), Sheriff Cullen Talton ("Sheriff Talton"), and Margo Hays, Michael Garrett, John Stinson, and General Granville ("the Jailers") (collectively, "the Houston County Defendants"); Johnny C. Sikes, Hilton Hall, and Hugh Smith, all former wardens of Georgia State Prison ("GSP"), and Ronald King, a former hearings officer at GSP (collectively "the State Defendants"); and Warner Robins, Georgia and ten individual officers for the Warner Robins Police Department (collectively, "the City Defendants"). Currently before the Court are the Houston County Defendants' and the State Defendants'

Motions to Dismiss.  Upon review of the applicable law, the Amended Complaint, and the Motions and responses thereto, the Court **GRANTS** the pending Motions to Dismiss [Docs. 17 & 22]. Thus, the following claims are hereby **DISMISSED**: (1) all claims against the State Defendants; (2) all claims against Defendant Houston County; and (3) all claims against the Sheriff and the Jailers in their official capacities.  All other claims will go forward.

BACKGROUND

For purposes of these Motions, the Court accepts all factual allegations in Plaintiff's First Amended Complaint as true and construes them in the light most favorable to Plaintiff.

On September 14, 1984, Taressa Stanley was shot and killed during an armed robbery. On September 24, Plaintiff, a 22 year old African–American male, was arrested in Houston County on charges of murder and armed robbery and placed in solitary confinement in the Houston County Jail ("the Jail"), where he remained for the next three months. In October, deputies from the Warner Robins Police Department ("WRPD") forced Plaintiff out of his cell and took him to a bridge, and dangled him over the side, yelling at him to sign a confession or he would be dropped. Fearing for his life and the fate of his family, Plaintiff pled guilty to armed robbery and murder on December 11, 1984, in exchange for the death penalty being removed from

consideration. Plaintiff was sentenced to life in prison and spent the next 21 years in GSP.

On February 13, 2006, the Supreme Court of Georgia overturned his conviction and sentence.  Subsequently, officers from the WRPD and deputies from the Houston County Sheriff's Office ("HCSO") began re-investigating the murder. On March 22, Plaintiff was moved from GSP to the Houston County Jail, where he was re-arrested for the murder without probable cause, based on an improper and unlawful investigation. The State re-indicted Plaintiff on June 6, 2006, and within a month of the re-indictment, the District Attorney filed a notice to seek the death penalty. For the next seven years, Plaintiff remained in the Houston County Jail, with four of those years spent in solitary confinement, until a jury acquitted Plaintiff of all charges on December 5, 2013.

Plaintiff's Confinement at Georgia State Prison

Plaintiff was incarcerated at GSP from March 22, 1985, until March 22, 2006. While he was incarcerated, Defendant Warden Sikes implemented a policy requiring all inmates participate in a daily inspection of their housing areas; Defendants Hall and Smith also implemented this policy during their respective terms as wardens of GSP. In early 1997, Defendant King, a Hearing Officer for the Office of Inmate Discipline, ordered that Plaintiff be sent to solitary confinement for failing to stand in his cell for Warden Sikes's inspection; Warden Sikes approved of this punishment.

Plaintiff remained in solitary confinement for the next nine years on Defendant King's instruction and with the full knowledge and approval of Wardens Sikes, Hall, and Smith during their respective terms. During his nine-year solitary confinement, Plaintiff was housed in a cramped, windowless cell, given almost no access to recreation, exercise, or any programming or vocational activities, and was deprived of interaction with other human beings. He could only exit his cell to shower, was only given access to the yard for exercise three or four times, and was prevented from going to the prison library. Once or twice a week a group of guards – referred to as the "Goon Squad" – would enter Plaintiff's cell without provocation or justification and beat him, causing many physical and mental injuries including numerous broken bones for which he received no medical treatment. The punishment was "grossly disproportionate" to the alleged offense, totally without penological justification, and amounted to cruel and unusual punishment.[1]

Plaintiff's Confinement at the Houston County Jail

After his conviction was overturned, and he was released from GSP, Plaintiff was incarcerated at the Houston County Jail for seven and a half years. Upon entering the Jail, he was immediately classified as "medium maximum" security and placed in an "H" pod cell, where he was deprived of a cellmate. He was the only prisoner required

---

[1] Pl. Am. Compl., ¶ 61, pp. 25-26.

4

to be escorted by a supervising officer and a deputy whenever he moved around the jail.

On May 15, 2009, Defendant Hays, Chairperson of the Jail's Classification Committee, ordered Plaintiff be placed in solitary confinement, without providing Plaintiff prior written notice of charges against him or explaining why this "disciplinary" action was taken.[2]  Plaintiff had no disciplinary charges or issues while he was housed in the Jail. Plaintiff was placed in solitary confinement "based upon an express or implied agreement between the Houston County Defendants and the State Defendants."[3] Plaintiff remained in solitary confinement for the next four and a half years, until the jury acquitted him of all charges in December 2013. During those four and a half years of solitary confinement, Plaintiff was housed in a cramped, windowless cell, deprived of human interaction, only exiting his cell to shower and occasionally attend 30-minute "yard calls," where he was allowed outside, but he could not interact with other inmates. Although the Jail's policy requires each inmate be provided with 30 minutes of yard time every day, Plaintiff's yard time was cancelled multiple times a week. Plaintiff's time in solitary confinement caused him to suffer anxiety, insomnia, nightmares, difficulties concentrating, heart palpitations, depression, hallucinations, and trouble with his vision.

---

[2] *Id.* at ¶ 66, p. 27.
[3] *Id.* at ¶ 64, p. 27.

5

Based on the foregoing allegations, Plaintiff filed suit in this Court against the Houston County Defendants, the State Defendants, and the City Defendants alleging various violations of federal and state law arising out of his alleged malicious prosecution and the alleged inhumane conditions of confinement he suffered at both GSP and the Jail. The State Defendants have now moved to dismiss all claims asserted against them, and the Houston County Defendants have moved to dismiss all claims against Defendant Houston County and all official-capacity claims against the Sheriff and the Jailers.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[4]  To avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5]  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[7]

---

[4] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).
[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).
[6] *Id.*
[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

<u>ANALYSIS</u>

Plaintiff alleges all of the Houston County Defendants and the State Defendants are liable under § 1983 for (1) violating his right to be free from cruel and unusual punishment under the Eighth Amendment, (2) violating his substantive and procedural due process rights under the Fourteenth Amendment, and (3) conspiring to deprive him of his constitutional rights. Plaintiff asserts both § 1983 and state law claims for malicious prosecution against three of the Jailers—Defendants Garrett, Stinson, and Granville. For the following reasons, all claims against the State Defendants and Defendant Houston County must be dismissed, and all official-capacity claims, both state and federal, against the Sheriff and the Jailers must be dismissed.

**A.  <u>§ 1983 Claims against the State Defendants</u>**

Plaintiff asserts the following § 1983 claims against the State Defendants in their official and individual capacities: (1) deliberate indifference to the inhumane conditions of Plaintiff's confinement while he was a prisoner at GSP, in violation of his Eighth Amendment rights; (2) violation of his Fourteenth Amendment procedural and substantive due process rights while he was he was a prisoner at GSP; and (3) civil conspiracy with the Houston County Defendants to deprive Plaintiff of his constitutional rights. For the following reasons, Plaintiff's claims against the State Defendants must be dismissed.

7

1.  **Plaintiff's Deliberate Indifference and Due Process Claims are Time-Barred**

Plaintiff's deliberate indifference and due process claims related to his incarceration at GSP are time-barred by the applicable two-year statute of limitations. "Claims brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought. In Georgia, the statute of limitations for tort actions is two years."[8] Federal law determines when the statute of limitations begins to run.[9] Generally, "the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."[10]

Plaintiff's deliberate indifference and due process claims asserted against the State Defendants are based on events that occurred throughout a nine-year period of time, from "early 1997," when Plaintiff was placed in solitary confinement, until March 22, 2006, when he was released from GSP. Thus, any § 1983 claim based on the events during this time period was or should have been apparent at least by March 22, 2006. Plaintiff did not file his Complaint until November 9, 2015, more than nine years after his claims were apparent, far exceeding the applicable two-year statute of limitations.

---

[8] *Wellons v. Commissioner, Ga. Dept. of Corrections*, 754 F.3d 1260, 1263 (11th Cir. 2014) (citations omitted).
[9] *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996).
[10] *Id.* at 561-62 (internal marks omitted).

Plaintiff's argument he alleges a continuing violation is unpersuasive. The continuing violation doctrine constitutes an exception to the two-year statute of limitations. "The critical distinction in the continuing violation analysis . . . is whether the plaintiffs complain of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does."[11] Here, Plaintiff complains of the present consequence of one-time violations that do not extend the statute of limitations. Therefore, these claims are time barred and must be dismissed.

### 2.  Plaintiff Fails to State a Civil Conspiracy Claim

To state a claim for conspiracy, a complaint must contain more than just vague and conclusory accusations.[12] "It is not enough to simply aver in the complaint that a conspiracy existed."[13] Instead, the complaint must contain "enough factual matter (taken as true) to suggest that an [illegal] agreement was made."[14] "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."[15] Moreover, "a well-pleaded

---

[11] *Knight v. Columbus, Ga.*, 19 F.3d 579, 580-81 (11th Cir. 1994) (internal marks omitted).

[12] *See Twombly*, 550 U.S. at 555; *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir.1984).

[13] *Fullman*, 739 F.2d at 557.

[14] *Twombly*, 550 U.S. at 556.

[15] *Id.*

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."[16]

Here, Plaintiff fails to allege facts sufficient to suggest an illegal agreement was made between the State Defendants and the County Defendants to violate Plaintiff's constitutional rights. Plaintiff simply avers his treatment was the result of an agreement between the parties; he offers no plausible grounds "to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement."[17] He alleges Defendants "engaged in or facilitated overt acts" in furtherance of the conspiracy, but he fails to allege any factual allegations identifying those acts.[18] That Plaintiff "was immediately classified as 'medium maximum' security and the only inmate required to be escorted by a supervising officer and a deputy" and "was subjected to exactly the same unconscionable treatment within the Houston County Jail as the Georgia State Prison,"[19] is not enough to "establish the supporting, operative facts of the conspiracy"[20] and show that Defendants "reached an understanding to violate [his] rights."[21]

---

[16] *Id.*

[17] *Id.*

[18] Pl. Am. Compl., p. 42  [Doc. 15].

[19] *Id.* at p. 26.

[20] *Johnson v. State of Ga.*, Case No. 6:06-cv-49, 2007 WL2684985, *2 (M.D. Ga. Sept.7, 2007) (citing *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1982)).

[21] *Rowe v. City of Fort Lauderdale*, 279F.3d 1271, 1283 (11th Cir. 2002) (internal quotation marks and citation omitted).

By contrast, in *Allen v. Secretary, Fla. Dep't of Corrections*, the Eleventh Circuit found the plaintiff's allegations sufficient to state a conspiracy claim.[22]  Unlike Plaintiff here, Allen had not just broadly alleged that a conspiracy existed between the defendants. Instead, Allen specifically alleged the "defendants [were] either family to one another, drinking buddies, hunting buddies, and all [were] members of a Department of Corrections brotherhood [something like a gang] and ha[d] pledged [for all to hear] that they w[ould] protect one another no matter what it t[ook]."[23] As further evidence of the alleged conspiracy among the defendants, Allen contended an officer told him specifically another officer's husband asked the officer and a third officer "to do [the officer's husband] a favor since they are friends and hunting buddies" and "to have [the plaintiff] placed in confinement in retaliation for filing a grievance."[24] Based on these fact-specific allegations, the Eleventh Circuit found Allen's complaint contained sufficient facts to plausibly suggest the defendants entered into an illegal agreement. Plaintiff's Complaint is void of any such fact-specific support for the existence of an illegal agreement. Thus, Plaintiff's civil conspiracy claim against the State Defendants must also be dismissed for failure to state a claim upon which relief may be granted.

---

[22] 578 Fed. App'x 836 (11th Cir. 2014).

[23] *Id*. at 841.

[24] *Id*.

11

**B.   Claims against the Houston County Defendants**

Plaintiff asserts both federal and state law claims against the Houston County Defendants. Specifically, Plaintiff brings § 1983 claims against all of the Houston County Defendants asserting they violated his Eighth Amendment rights with their deliberate indifference to the inhumane conditions of his confinement while he was incarcerated at the Jail; violated his Fourteenth Amendment procedural and substantive due process rights while he was incarcerated at the Jail; and conspired with the State Defendants to deprive him of his constitutional rights. Plaintiff also asserts § 1983 and state-law claims for malicious prosecution against Defendants Garret, Stinson, and Granville. For the reasons explained below, the § 1983 claims against the County, and all claims, both state and federal, against the Sheriff and the Jailers in their official capacities, must be dismissed.

**1.   § 1983 Claims against the County**

"In order to prevail in a civil rights action under [42 U.S.C.] § 1983, a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law."[25] Local government units such as counties constitute "persons" subject to suit

---

[25] *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (internal quotation marks and citation omitted).

under § 1983.[26] At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under [§] 1983."[27]

Here, Plaintiff seeks to hold Houston County liable for the allegedly unconstitutional acts and omissions of Sheriff Talton and his deputies. A county "cannot be held liable under § 1983 on a *respondeat superior* theory."[28] On the contrary, local governing bodies, such as counties, can be sued under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers."[29] Thus, in order to hold a county liable under § 1983, a plaintiff must show a county employee or policymaker committed the constitutional violation and did so pursuant to an official county policy or custom.[30] This requirement "is intended to distinguish the acts of the *municipality* from the acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible.*"[31]

Thus, Houston County can only be held liable under § 1983 for the acts and omissions of Sheriff Talton and his deputies only if (1) Sheriff Talton and his deputies acted on behalf of the county, and (2) they did so pursuant to the county's official

---

[26] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).

[27] *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

[28] *Monell*, 436 U.S. at 691.

[29] *Id*. at 690.

[30] *Id*. at 694; *Grech*, 335 F.3d at 1329.

[31] *Grech*, 335 F.3d at 1329 n. 5 (emphasis in original).

13

policy or custom. Defendant Houston County argues the Sheriff's and his deputies' actions were on behalf of the State, not the county, and therefore Plaintiff's claims against Houston County must be dismissed. The Court agrees.

Whether a sheriff acts on behalf of the State or the County is a question that "must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise."[32] In *Manders*, the Eleventh Circuit set out four factors to assess a defendant's function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity."[33]

In *Grech*, the Eleventh Circuit concluded sheriffs are state rather than county policymakers for their law enforcement functions.[34] "In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement functions. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and policies. Counties also have no role in the training or supervision of the sheriffs' deputies."[35] Moreover, in *Purcell v. Toombs Cnty., Ga.*, the Eleventh Circuit found the sheriff "functions as an arm of the

---

[32] *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003).
[33] *Id.* at 1309.
[34] 335 F.3d at 1348.
[35] *Id.* at 1336.

State—not of [the] County—when promulgating policies and procedures governing conditions of confinement at the [ ] jail."[36]

Here, Plaintiff seeks to hold Houston County liable for the allegedly inhumane conditions of confinement Plaintiff suffered while incarcerated at the Jail, for violations of his due process rights, and for conspiracy to violate his constitutional rights, all claims that arise from Plaintiff's placement in solitary confinement. "In general, the Eleventh Circuit has concluded that Georgia sheriffs are an 'arm of the state' in the operation of county jails[.]"[37] "Because the classification and placement of inmates clearly falls within the operation of jails," the Sheriff and his deputies functioned as an "arm of the state" when placing Plaintiff in solitary confinement. Moreover, a sheriff functions as an "arm of the state" concerning conditions of confinement in the local jail.[38]

Plaintiff argues the Sheriff's responsibility for his well-being while in custody is analogous to his duty to provide medical care, which is a county function. The Court is not convinced. There are a number of Georgia statutes which refer to a sheriff as providing county functions when providing medical necessities to inmates.[39] Plaintiff has not identified, and neither has this Court found, any such similar statutes

---

[36] 400 F.3d 1313, 1325 (11th Cir. 2005).
[37] *Youngs v. Johnson*, Case No. 4:06-cv-19(CDL), 2008 WL 4816731, *6 (M.D. Ga. Oct. 30, 2008) (citing *Purcell*, 400 F.3d at 1324-25; and *Manders*, 338 F.3d at 1328).
[38] *See Purcell*, 400 F.3d at 1325; *Manders*, 338 F.3d at 1328.
[39] *See, e.g.,* O.C.G.A. § § 42-4-1 and 42-522(a).

applicable to the functions at issue here. On the contrary, Plaintiff ultimately complains about the Sheriff's and his deputies' operation and administration of the Jail, functions which arise from the State, not the County.[40] Thus, Houston County cannot be held liable for the Sheriff's and his deputies' actions arising out of their state functions, and Plaintiff's claims against the County must be dismissed.

### 2.  Official Capacity Claims against the Sheriff and the Jailers

Plaintiff also seeks to hold Sheriff Talton and Defendants Hays, Garrett, and Stinson liable in their official and individual capacities pursuant to § 1983 for violations of his constitutional rights that allegedly arose out his confinement at the Jail, and he seeks to hold Defendants Garrett, Stinson, and Granville liable in their official and individual capacities under § 1983 and Georgia law for malicious prosecution.[41] In their Motion, Defendants seek to have the § 1983 official-capacity claims dismissed as barred by Eleventh Amendment Immunity, and the state-law official-capacity claims dismissed as barred by sovereign immunity. The Court agrees.

### a.  Eleventh Amendment Immunity for § 1983 Official-Capacity Claims

The Eleventh Amendment provides immunity to state officials or those functioning as an "arm of the state" from being sued in their official capacity in federal

---

[40] *See Manders*, 338 F.3d at 1315.

[41] Defendants do not move to dismiss the individual-capacity claims brought against the Sheriff and the Jailers.

court.[42]  The Eleventh Circuit has acknowledged that Georgia Courts have concluded sheriff's deputies are employees of the sheriff, not the county.[43] Moreover, courts in this Circuit have determined that when a sheriff is acting as an arm of the state, his deputies are also entitled to Eleventh Amendment immunity.[44] Having already concluded in this case the Sheriff and his deputies were acting as an arm of the state in the operation of the Jail and concerning conditions of confinement there, they are entitled to Eleventh Amendment immunity for Plaintiff's § 1983 claims against them in their official capacity. [45]

### b.  Sovereign Immunity for Official-Capacity State-Law Claims

Plaintiff concedes Defendants Garrett, Stinson, and Granville are entitled to sovereign immunity on his state-law malicious prosecution claims asserted against them in their official capacity. Thus, these claims are dismissed.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motions to Dismiss [Docs. 17 & 22] filed by the State and County Defendants. Thus, the following claims are hereby **DISMISSED**: (1) all claims against the State Defendants; (2) all claims against Defendant Houston County; and (3) all claims against the Sheriff and the Jailers in their

---

[42] *Manders*, 338 F.3d at 1308.
[43] *Grech*, 335 F.3d at 1342 (citations omitted).
[44] *Youngs*, 2008 WL 4816731 at 6 (citations omitted).
[45] *See id.* (citing *Purcell*, 400 F.3d at 1324-25; and *Manders*, 338 F.3d at 1328).

official capacities.  Thus, all claims against the City Defendants and all claims against the Sheriff and the Jailers in their individual capacities remain pending.  The stay of discovery in this case is hereby **LIFTED**, and the parties must file their Proposed Scheduling and Discovery Order within fourteen (14) days of the date of this Order.

        **SO ORDERED**, this 2nd day of August, 2016.

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH